UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TESSIE MARIE PARMENTER

             Plaintiff,                            Case No.  1:14-CV-1137

v.                                           HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY

             Defendant,
_____/

## OPINION

       This is a social security action brought under 42 U.S.C. §§ 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Tessie Marie Parmenter seeks review of the Commissioner's decision denying her claim for disability benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

       The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide

questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).  As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was born on December 7, 1984. (A.R. 234). She was 28 years old on the date of the Administrative Law Judge's (ALJ) decision (A.R. 33) and 12 years old on the date of her alleged disability onset of December 7, 1996. (A.R. 249).  She completed some college classes. (A.R. 33).  Plaintiff has a limited work history. She generally spent only two months at any job

(A.R. 34) and earned few wages such that the ALJ determined her work did not rise to the level of substantial gainful activity. (A.R. 23).   Plaintiff applied for DIB, SSI and Child Disability Benefits on December 20, 2011, complaining of major depression. (A.R. 57, 221–255).   Plaintiff's applications were denied on June 1, 2012 (A.R. 114), and plaintiff thereafter sought review before an ALJ. On June 7, 2013, plaintiff  appeared with her counsel before ALJ Kathleen Eiler for an administrative hearing in which both plaintiff and a vocational expert (VE) testified. (A.R. 33). On July 26, 2013, the ALJ issued her written decision which determined plaintiff was not disabled under the Act. (A.R. 30).  The Appeals Council declined to review the ALJ's decision on September 10, 2014, making it the Commissioner's final decision. (A.R. 1–4).  Plaintiff's thereafter initiated this action, seeking review of the ALJ's denial of DIB and SSI.[1]

## ALJ'S DECISION

A claimant must prove that she suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). To aid ALJs in applying the above standard, the Commissioner of Social Security has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five step sequential process" for claims of disability.  First [a] plaintiff must demonstrate that she is not

---

[1]The ALJ determined that the earliest plaintiff could claim a disability onset was on December 6, 2002, her eighteenth birthday (A.R. 13) which, in this case, meant plaintiff could not continue with her child disability claims.  Plaintiff does not contest that portion of the ALJ's determination.

currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, [a] plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if [a] plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, [a] plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, [a] plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that [the] plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted);

*see also* 20 C.F.R. §§ 404.1520(a-f).

The plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since December 6, 2002, plaintiff's earliest possible onset date. (A.R. 16). Second, the ALJ determined that plaintiff had the severe impairments of affective disorder, anxiety disorder, personality disorder, and marijuana abuse disorder. (A.R. 16). Third, the ALJ considered whether plaintiff met a listed impairment and found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (A.R. 16–18).

4

At the fourth step, the ALJ considered plaintiff's residual functional capacity (RFC) and determined that:

> claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple, routine, repetitive tasks with minimal changes in a routine work setting and no production rate pace work. She can occasionally interact with supervisors, but she should have only brief, superficial interaction with coworkers and the general public.

(A.R. 18). Continuing with step four, the ALJ determined that plaintiff had no past relevant work. (A.R. 23).

At the fifth step, the ALJ used the VE's testimony from the administrative hearing to determine whether a significant number of jobs exist in the economy which plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 182,099 national jobs which a person with plaintiff's RFC could perform, such limitations notwithstanding (A.R. 52–54). The VE testified that this work included jobs as a hospital cleaner, cleaner II, and housekeeping cleaner. (A.R. 53–54). This represents a significant number of jobs. *See Hall v.* Bowen, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Thus, following the five steps, the ALJ determined plaintiff was not disabled within the meaning of the Act.

## ANALYSIS

Plaintiff's statement of errors presents the following claims.

1. The ALJ committed reversible error by not properly weighing the opinion of Plaintiff's treating psychiatrist and the opinion of the consultive psychologist.

2. The ALJ erred by admitting the report of Dr. Bogoian and by not accepting Plaintiff's offer of proof.

5

3.      The ALJ committed reversible error by relying upon improper and vague boilerplate language.

4.      The ALJ committed reversible error by failing to rely upon the vocational expert's answer to an accurate hypothetical question

(Dkt. #13, PageID 727).  The Court will discuss the issues below.

**A.      The ALJ Properly Evaluated the Medical Opinions**

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ

6

must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (*quoting Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

The ALJ gave the opinion of a non-examining state agency physician, who reviewed plaintiff's medical records, significant weight because the ALJ found it consistent with the medical record.  The ALJ also gave the opinion of a non-treating examiner, significant weight because it was consistent with his evaluation, other portions of the medical record, and plaintiff's daily activities. In contrast, the ALJ gave the opinion of plaintiff's treating psychiatrist little weight because it was inconsistent with plaintiff's daily activities. Plaintiff contends that the ALJ's treatment of the opinion evidence–affording great weight to the first two physicians and giving little weight to the opinions of her treating psychiatrist–is contrary to the Sixth Circuit's ruling in *Gayheart.* However, plaintiff mischaracterizes *Gayheart.* That case does not stand for the proposition that an ALJ may not give great weight to the opinion of a non-examining or non-treating source when a treating physician has given an opinion. Rather, as mentioned above, *Gayheart* affirms that the ALJ must "give good reasons" for according less than controlling weight to a treating source's opinion. *Id.* at 376. Simply stating that the physician's opinions "are not well-supported by any objective findings" and are

inconsistent with other substantial evidence is not enough. *Id.* at 376–77.

### 1.    Dr. Pickens

On May 15, 2013, Dr. Naudia Pickens filled out a check-box worksheet that asked her opinion regarding plaintiff's mental limitations. The worksheet listed several different abilities and asked the doctor to check a box that reflected the limitations she believed plaintiff would have in performing that ability.  The four listed limitations included mild, moderate, marked, and extreme limitations. (A.R. 637). The worksheet stated that "mild" limitations were those that did not significantly limit plaintiff's ability to perform most jobs; "moderate" limitations were those that would result in satisfactory, though limited, function; "marked" limitations were those that seriously, but not completely, interfered with her ability to function independently, appropriately, and effectively on a sustained basis; and "extreme" limitations were those that were incompatible with the ability to do any gainful activity. (A.R. 637).  The parties do not dispute that Dr. Pickens is a treating source.

Dr. Pickens opined that plaintiff had mild limitations regarding her ability to follow work rules, maintain her personal appearance, and to go about her activities of daily living.  Dr. Pickens further stated plaintiff had moderate limitations on her ability to function independently, and had marked limitations on her ability to relate to co-workers, interact with supervisors, use judgment, and understand detailed but not complex job instructions.  Finally, plaintiff had extreme limitations on her ability to deal with the public, deal with work stresses, maintain her concentration, understand complex job instructions, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, maintain social functioning, and maintain concentration, persistence or pace. (A.R. 637–39).  Dr. Pickens finally noted that plaintiff had experienced four or

more episodes of decompensation, each of which were of extended duration.[2] (A.R. 638).

The ALJ discussed Dr. Pickens' opinion as follows, starting with discussing the doctor's opinion on plaintiff's episodes of decompensation:

> There is no evidence of any inpatient hospitalizations nor is there other evidence of decompensation. Yet Dr. Pickens opined that the claimant had four or more episodes. This suggests that Dr. Pickens did not understand the assessment form. Further, the doctor's opinion overall is inconsistent with the situational nature of the claimant's symptoms and with the mental status examination findings, a number of which were unremarkable. This opinion is also inconsistent with the claimant's daily activities, which include reading and visiting others (7F). Accordingly, the undersigned gives little weight to this opinion. The undersigned also notes that the residual functional capacity includes significant limitations and limitations corresponding to concentration, persistence, or pace.

(A.R. 22).

The ALJ articulated good reasons, which were well supported in the record, for giving Dr. Pickens' opinions little weight. The ALJ found that the extreme restrictions proffered by Dr. Pickens were inconsistent with the record as a whole. While the record shows plaintiff experienced serious periods of depression, it also shows no history of psychiatric hospitalizations and no documented episodes of decompensation. (A.R. 17, 408). At a July 5, 2012, visit with a nurse practitioner, for example, plaintiff was noted to have experienced "no major flare ups of anxiety or depressive episodes . . . ." (A.R. 495). The record also shows plaintiff is generally independent in her activities of daily living. (A.R. 436). She watches TV, visits with friends, and goes shopping. (A.R. 478). She is able to make meals with several courses, clean, do laundry, mow the lawn, and perform household repairs. (A.R. 302). As the ALJ correctly noted, plaintiff main

---

[2] Episodes of decompensation are generally used to establish whether a plaintiff meets a mental impairment in the Listing of Impairments. *See, e.g.,* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Plaintiff is not arguing that she meets a listing, however, rather that the opinion of the doctor was entitled to controlling weight.

difficulty is working with others.  Here, the RFC took that difficulty into account. It allowed for occasional contact with supervisors and only brief contact with others. (A.R. 18).  To the extent that Dr. Picken's opinion is inconsistent with the RFC, the ALJ provided good reasons for giving that opinion less than controlling weight.  Accordingly, the ALJ did not err in her treatment of Dr. Pickens' opinion.

### 2.    Dr. Irey

On May 29, 2012, Dr. Larry Irey, Ph.D., a state agency medical consultant, reviewed plaintiff's medical records.  Dr. Irey noted that plaintiff's cognitive functioning was intact. (A.R. 64).  While plaintiff had difficulties in sustained concentration and pace, Dr. Irey opined plaintiff was not significantly limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain attendance, be punctual, sustain a routine, work in coordination and proximity to others, and make simple work-related decisions.  She was only moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (A.R. 65-66).  The doctor further noted that plaintiff is "moderately limited regarding [her] capacity to interact with the public, co-workers and supervision, and should be reasonably limited from requirements for interactions with others in the work place." (A.R. 67).

With regard to Dr. Irey's opinion, the ALJ wrote:

> [T]he opinion of the State agency psychological consultant supports a finding of 'not disabled.'  Specifically, Larry Irey, Ph.D., opined that the claimant had no severe mental impairments prior to August 2011.  Since then, Dr. Irey opined that the claimant retained the capacity to understand, remember, and carry out simple instructions and that the claimant retained the capacity to make basic work related judgment and decisions.  According to Dr. Irey, the claimant should be reasonably limited in her interactions with others in the work place.  Dr. Irey also indicated that the claimant was limited to

10

> performing simple and repetitive tasks (1A; 2A; 3A; 6A). This opinion is
> consistent with the record, including the claimant's lack of specialized
> treatment for a large part of the relevant period, her lack of inpatient
> psychiatric hospitalizations, and her independent daily activities. Further,
> Dr. Irey is an expert who reviewed the entire record at the time of his
> opinion. His opinion is based on that review and his familiarity with the
> disability program and its requirements. Therefore, the undersigned gives
> significant weight to this opinion.

(A.R. 21). The ALJ explained that she assigned greater weight to Dr. Irey's opinion because it was

consistent with the medical record. That assessment is supported by substantial evidence. Plaintiff,

for example, stated she is physically capable of working, but can't work because her mental

impairments are such that she will "snap." (A.R. 478). Yet plaintiff is able to associate with friends.

(A.R. 478). She said she gets along "decent" with friends and family. (A.R. 480). She attends

church. (A.R. 624). At mental health evaluations, plaintiff was cooperative, compliant, and engaged.

(A.R. 357–58). At bottom, substantial evidence supports the ALJ's treatment of Dr. Irey's opinion.

Furthermore, as discussed above, the ALJ did not err in giving this opinion greater weight than that

given to the opinion of Dr. Pickens.

### 3.    Dr. Bogoian

On May 9, 2012, Dr. Rudy Bogoian examined plaintiff and observed that in terms

of social functioning, "her symptoms may impact her from none to moderately." (A.R. 482). As to

plaintiff's ability to complete work related demands, Dr. Bogoian noted that plaintiff would "have

from none to moderate difficulty with detail instructions. She may need longer than the average

time to complete a task. One may infer from the information obtained and her performance during

the evaluation that she may interact with the public, supervisors, co-workers, in a similar manner."

(A.R. 483).

The ALJ gave significant weight to Dr. Bogoian's opinion, noting:

> This opinion is consistent with the claimant's mental status examination findings, many of which were unremarkable. It is also consistent with the claimant's daily activities, which include driving, reading, scrapbooking, shopping, and performing household chores (5E; 5F; 7F Testimony). Further, Dr. Bogoian's thorough evaluation of the claimant supports this opinion. The undersigned thus gives significant weight to this opinion.

(A.R. 22).

As with Dr. Irey, the ALJ explained that she assigned significant weight to Dr. Bogoian's opinion because it was consistent with the medical record. As discussed above, the medical evidence indicated that plaintiff's ability to work was not limited to the extent she alleged, and thus Dr. Bogoian's opinion is supported by substantial evidence.

Plaintiff, however, disagrees with the weight assigned Dr. Bogoian–contending that Dr. Bogoian's opinion is of limited usefulness because it was rendered before additional medical evidence was developed, and that Dr. Bogoian's opinion is nearly identical to opinions he rendered in separate cases. (Dkt. #13, PageID 728). Plaintiff's claims are unavailing.

As to the first matter, plaintiff contends that because both Dr. Bogoian and Dr. Irey did not review the medical evidence developed later in this case–including Dr. Pickens' opinion setting forth Plaintiff's restrictions–the ALJ could not rely on their opinions to deny benefits. However, an ALJ is not precluded from relying on an opinion that did not consider the complete medical record if the ALJ gives "some indication that [he] at least considered [the additional evidence] before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir.2007) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3). As discussed, the ALJ thoroughly examined the opinion of Dr. Pickens and explained her reasons for giving it little weight. Accordingly, the ALJ did not err.

Regarding the second matter, plaintiff did not submit any additional evidence on Dr.

12

Bogoian's opinion either to this Court or to the Commissioner on appeal.  The ALJ, for her part, noted the objection but rejected it because "there is no evidence in the instant case that Dr. Bogoian's findings are unreliable." (A.R. 20).  The Court agrees, that there is nothing in the record demonstrating Dr. Bogoian's conclusions are unreliable.  As the ALJ noted, the opinion is largely consistent with other portions of the record.  Moreover, the Court finds that the record does not support a remand. Plaintiff does not point to any evidence that is new or material that would warrant a remand under sentence six. 42 U.S.C. § 405(g); *Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir.2005).  The Court has determined that the ALJ's treatment of the opinion is supported by substantial evidence.  Accordingly, the plaintiff has not shown that the ALJ erred in her treatment of Dr. Bogoian.

### 4.    Dr. Barnes

Plaintiff finally presents evidence in the form of a psychological evaluation performed by Dr. Byron Barnes on May 30, 2013 and written on June 6, 2013 (one day before the administrative hearing). (A.R. 651).  This evidence was not before the ALJ at the time of her decision. (A.R. 25-29).  Plaintiff asks for a sentence six remand. (Dkt. #13, PageID 728) (A.R. 651).

Dr. Barnes' evaluation concluded that plaintiff's intellectual functioning was within the average range.  She had a good intellectual capacity.  There were no apparent indications of gross neuropsychological deficits or severe organic impairment. (A.R. 657).  Plaintiff, however, was markedly distressed regarding her emotions.  She was inundated and overwhelmed, anxious and depressed. (A.R. 658). The doctor noted that she was more distressed at this evaluation than her last evaluation in September 2011 (A.R. 354), noting that plaintiff was no longer taking drugs (apparently illegal), and the calming components of the drugs were no longer helping plaintiff. (A.R.

658).  Her prognosis, Dr. Barnes concluded, was poor. (A.R. 658)

When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court ... may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001). To show good cause a claimant is required to detail the obstacles that prevented her from entering the evidence in a timely manner. *Bass v. McMahon*, 499

14

F.3d 506, 513 (6th Cir.2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir.2012).

Plaintiff fails to show how this evidence, if considered by the ALJ, would have changed the decision of the Commissioner.  Plaintiff does not argue, and the record does not support, that Dr. Barnes was a treating source such that his opinion was entitled to controlling weight.  As such, the ALJ was only required to consider the medical opinion under 20 C.F.R. § 404.1527.  Here, even if the ALJ considered the medical opinion, there is no indication it would have changed the ALJ's opinion. In rejecting similar opinions, namely that of plaintiff herself, the ALJ gave several reasons for discounting the opinion, including the plaintiff's activities of daily living, ability to maintain friendships, go to church, and get along with medical examiners.  The Court has already determined that the ALJ had substantial evidence for making that decision, and accordingly finds that plaintiff has not shown how Dr. Barnes' opinion would change the ALJ's calculus.

Finally, plaintiff has not shown "good cause" to remand this case. The evaluation took place a week before the administrative hearing and was issued the day before the hearing, yet plaintiff's attorney did not bring the evaluation to the ALJ's attention nor ask the ALJ to hold the record open so that he could submit the opinion. (A.R. 30–56).  Under such circumstances, the plaintiff cannot demonstrate "good cause" exists to remand the case. *Bass*, 499 F.3d at 513.  The Court thus finds that plaintiff had ample time within which to submit new information to the ALJ before he rendered his decision, and accordingly rejects plaintiff's request for a remand.

**B.      Plaintiff's Credibility**

With respect to her assessment of Plaintiff's credibility, the ALJ concluded as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision.

(A.R. 19).

Plaintiff argues the ALJ erred in addressing her credibility in two respects. First, by using boilerplate language in rejecting the plaintiff's subjective allegations, and second by refusing to adopt the hypothetical posed to the VE which incorporated plaintiff's subjective complaints. (Dkt. #13, PageID 731).

Plaintiff first asserts that she is entitled to relief because the ALJ's reliance on "meaningless boilerplate clearly demonstrates that her opinion is not supported by substantial evidence." (Dkt. #13, PageID 731). Plaintiff cites to *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), in which the Seventh Circuit criticized the use of the aforementioned language as "meaningless boilerplate." *Id.* at 645. As has been recognized, however, the shortcoming with the ALJ's decision that was at issue in *Bjornson* was that the ALJ in that case "used the boilerplate as [his] only statement about the claimant's credibility." *Johnson v. Commissioner of Social Security*, 2013 WL 1703894 at *4 (W.D. Mich., Apr. 19, 2013). On the other hand, where such boilerplate is accompanied by appropriately detailed and focused analysis, the presence of the offending boilerplate does not constitute grounds for relief. *Id.* Here, the ALJ discussed the evidence of record at length and detailed her rationale for discounting plaintiff's subjective allegations. (Tr. 19–21). The Court, therefore, rejects this argument.

As to plaintiff's second claim regarding the ALJ's credibility analysis, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v.*

16

*Secretary of Health and Human Services.*, 927 F.2d 228,  231 (6th Cir. 1990).  It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993); *see also Carrelli v. Commissioner,* 390 F. App'x 429, 438 (6th Cir.2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The VE does not determine a claimant's medical restrictions or how they impact on the claimant's residual functional capacity—that is the ALJ's job. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir.1987). The ALJ, having found that plaintiff's subjective complaints were not fully credible, was not bound in any way by a VE's responses to hypothetical questions incorporating a contrary assumption.

Accordingly, plaintiff's credibility claims are denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**.  A separate judgment shall issue.


_____/s/Robert J. Jonker_____
Robert J. Jonker
Chief United States District Judge

Dated:  November 5, 2015

17